UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ELAINE REYNOSA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-03231-JRS-DLP |
| | ) | |
| A & S TRANSPORTATION, | ) | |
| | ) | |
| Defendant. | ) | |

**AMENDED REPORT AND RECOMMENDATION**

This matter comes before the Court on the Defendant's Motion to Enforce the Parties' Settlement Agreement, Dkt. [38]. The motion was referred to the Undersigned for a Report and Recommendation.

**I.     Background**

Plaintiff Elaine Reynosa initiated this lawsuit on October 17, 2018, in which she alleges claims of age discrimination and sexual harassment against her former employer, Defendant A & S Transportation. (Dkt. 1). On November 29, 2018, Ms. Reynosa filed another lawsuit, 1:18-cv-3743-JRS-DLP ("the Related Matter"), that alleges the very same claims of age discrimination and sexual harassment against Defendant A & S Transportation. (Dkts. 1, 24). Because both cases involve the same claims, the Undersigned conducted a telephonic status conference on November 22, 2019 where both cases were discussed. (Dkt. 27). During that status conference, the parties agreed to participate in a joint settlement conference on January 22, 2020. (Id).

Ms. Reynosa and counsel for the Defendant, Ryan Young, appeared in person for the January 22, 2020 settlement conference. (Dkt. 31). That same day, the Undersigned docketed a minute entry, both in this matter and in the Related Matter, stating that a settlement had been reached; all deadlines, schedules, and conferences were vacated; and that the parties were to file a stipulation of dismissal within thirty (30) days. (Id).

On January 23, 2020, Ms. Reynosa called the Undersigned's chambers and indicated that she no longer agreed with the Settlement Agreement and would like to revoke her consent. Ms. Reynosa was directed by the chambers' staff member to either send any questions in writing to the Clerk's office or follow the guidelines for revocation outlined in the Settlement Agreement. Later that week, Ms. Reynosa appeared in person at chambers requesting to speak with the Undersigned, during which time Ms. Reynosa expressed her dissatisfaction with the monetary terms of the agreement. The Undersigned explained to Ms. Reynosa that the terms of the signed agreement could not be renegotiated, and that if she wanted to revoke her consent to settle, she would need to provide her revocation in writing.

Following this conversation, on January 27, 2020 Ms. Reynosa filed a Motion for Clarification, wherein she requests that the Court clarify whether the Settlement Agreement signed on January 22, 2020 encompassed one or both of her cases. (Dkt. 32). At the conclusion of her motion, Ms. Reynosa indicated that she would give her "answer to the attorney before the seventh day." (Dkt. 32).

The Defendant initially filed a response and amended response to the Plaintiff's Motion for Clarification on February 10, 2020, arguing that it "was clear to everyone involved in the settlement conference that any settlement would need to cover all of Plaintiff's outstanding claims against the Company, including those contained in the two lawsuits she had filed against the Company." (Dkts. 35, 36).

Shortly thereafter, on February 14, 2020, Defendant filed the present Motion to Enforce the Parties' Settlement Agreement, in which the Court is requested to enforce the January 22, 2020 Settlement Agreement and require the parties to complete their respective obligations under the Agreement within fifteen days. (Dkt. 38). Ms. Reynosa did not file a formal response to the Defendant's Motion to Enforce and, instead, on February 20, 2020, filed an Amended Motion for Clarification, wherein she informs the Court that she refuses to accept the Settlement Agreement by stating: "I did everything that I could do to say that I changed my mind and that I did not want to sign it in the first place, I was afraid about the sanctions that were going to be put on me for not signing or agreeing with that small amount and everything else in that settlement." (Dkt. 39). The Defendant did not file a reply.

After reviewing the parties' briefing, the Court determined that neither party addressed whether Ms. Reynosa followed the specific requirements under the Settlement Agreement for revoking consent. To that end, the Court requested that both parties file a supplemental brief that addressed the specific issue of whether the Plaintiff complied with the revocation requirements outlined in the Settlement

Agreement. Both the Plaintiff and the Defendant filed their briefs on May 8, 2020 as requested. (Dkts. 47, 48).

## II.  Legal Standard

An employee may waive a federal employment discrimination claim in private settlements with their employers. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 716 (7th Cir. 2009); *Pierce v. Atchison, Topeka & Santa Fe. Ry. Co.,* 65 F.3d 562, 570-71 (7th Cir. 1995). State contract law typically governs issues concerning the formation, construction, and enforcement of settlement agreements. *Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016); *see also Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 490 (7th Cir. 2002) ("a settlement agreement is enforced . . . just like any other contract). In the federal employment discrimination context, however, a requirement is added that the employee must consent to the settlement agreement "knowingly and voluntarily." *Pierce,* 65 F.3d at 571.

An employee may present defenses to the enforceability of a settlement agreement under state law or in response to the knowing and voluntary requirement. *Hampton*, 561 F.3d at 716. If an employee argues that the settlement agreement was not entered into "knowingly and voluntarily," the Court looks to the "totality of the circumstances" surrounding the execution of the agreement. *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007). The Court makes this inquiry when the party challenging the agreement comes "forward with specific evidence sufficient to raise a question as to the validity of the release." *Pierce v. Atchison Topeka & Santa Fe. Ry. Co.*, 110 F.3d 431, 438 (7th Cir. 1997).

### III. Discussion

#### A. Valid Contract

Indiana law governs whether Ms. Reynosa and the Defendant entered into a valid, enforceable settlement agreement. *Carlson v. CSX Trans., Inc.,* 710 Fed. App'x 700, 702 (7th Cir. 2017). "Under Indiana law, a person is presumed to understand and assent to the terms of the contracts [s]he signs." *Buschman v. ADS Corp.*, 782 N.E.2d 423, 428 (Ind. Ct. App. 2003). "All that is required to render a contract enforceable is reasonable certainty in the terms and conditions of the promises made, including by whom and to whom; absolute certainty in all terms is not required. Only essential terms need be included to render a contract enforceable." *Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.*, 906 N.E.2d 805, 813 (Ind. 2009).

The parties signed a Settlement Agreement during the January 22, 2020 settlement conference that indicates that the Defendant will pay the Plaintiff a sum of $10,000 for the dismissal of both the present case and of the Related Matter. Courts routinely conclude that settlement agreements are enforceable when they include material terms of payment for dismissal of the suit. *See Elustra v. Mineo*, 595 F.3d 699, 709 (7th Cir. 2010) ("We find that the material terms were definite and certain: defendants would pay $6,000 to the Elustras in exchange for their dismissal of the lawsuit."); *see also Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016) (agreement was enforceable because it sufficiently defines the parties' intentions and obligations, namely that plaintiff would voluntarily dismiss her

5

claim if the defendant paid her $210,000). Accordingly, the Undersigned recommends that the Court conclude that the parties signed a valid contract at the January 22, 2020 settlement conference.

### B. Defenses to a Valid Contract

Although the Settlement Agreement is valid under Indiana state law, as stated above, when an employee challenges her assent to a release as having been unknowing and involuntary, a court must examine the "totality of the circumstances" surrounding the release. *Pierce*, 65 F.3d at 571. The Seventh Circuit has held that District Courts must evaluate more closely the knowing and voluntary element of a release in cases where a plaintiff is not represented by counsel, possesses a limited education, executes a standard general release form prepared by the employer, or is unable to appreciate the consequences of the release. *Riley v. Am. Family Mut. Ins. Co.,* 881 F.2d 368, 374 (7th Cir. 1981).

In this case, Ms. Reynosa challenges the enforceability of the Settlement Agreement signed at the January 22, 2020 settlement conference for three reasons: (1) Ms. Reynosa did not intend to settle both of her pending cases for $10,000[1]; (2) Ms. Reynosa was pressured into signing the Settlement Agreement by threat of sanctions; and (3) Ms. Reynosa revoked her consent to settle. The Court will address each argument in turn.

---

[1] The parties' Settlement Agreement contains a non-disclosure clause. Thus, the Court will reference only the portions of the Settlement Agreement including the general release necessary to render its decision. Ms. Reynosa included the $10,000 figure from the Settlement Agreement in her January 27, 2020 Motion for Clarification (Dkt. 32) and, therefore, the Court finds no reason not to reference that figure here.

6

a.  *Settlement Amount*

Ms. Reynosa argues throughout her various briefs that she intended to settle only one of her cases for $10,000, but not both cases for that total amount. The Defendant argues that it was clear to everyone at the settlement conference and that the Settlement Agreement plainly states that both of Ms. Reynosa's cases would be settled for $10,000 total. Ms. Reynosa essentially argues that the parties did not have a meeting of the minds regarding a material term of the contract, namely the settlement amount.

The Undersigned and her staff took extensive, contemporaneous notes of the conversations that occurred during the January 22, 2020 settlement conference. Throughout the settlement conference, Ms. Reynosa actively engaged through several rounds of negotiations with the Defendant. The Undersigned will not divulge the exact figures discussed but will instead outline the course of discussion. During negotiations, Ms. Reynosa provided the Undersigned with a certain dollar amount that she would be willing to accept to settle one of her cases and she also provided the Undersigned with an amount that she would accept to settle both of her cases.  The Defendant rejected Ms. Reynosa offer and presented her with a different dollar amount to settle both of her cases. This back and forth continued over several rounds of negotiations, at the conclusion of which Ms. Reynosa asked the Undersigned for her assessment of both cases, and later for a mediator's proposal. The Undersigned responded both times by valuing the two cases at a combined total of $10,000. Throughout the course of negotiations, Ms. Reynosa

7

conveyed numerous demands and received numerous offers, all of which were global settlement amounts, expressly intended to cover both of her pending cases in this Court.

Although Ms. Reynosa argues now that she did not agree to settle both of her cases for $10,000, the record demonstrates otherwise. The Undersigned's notes and recollection of the conversations during the settlement conference show that Ms. Reynosa was informed that the Defendant's final offer of $10,000 was intended to cover both of her cases. With that knowledge, Ms. Reynosa signed the Settlement Agreement, that once again listed in the first paragraph that she was settling both of her cases for a total of $10,000.

The Settlement Agreement was not overly technical, nor was it excessively lengthy – instead it is four pages that lay out exactly what Ms. Reynosa was giving up by signing the Agreement. In addition, prior to signing the Agreement, Ms. Reynosa was given an opportunity to read the Agreement in its entirety and was advised that she could ask any questions that may arise. After allowing Ms. Reynosa some private time to review the Agreement, the Undersigned inquired whether Ms. Reynosa had any questions concerning the Agreement. Ms. Reynosa wanted more information regarding her tax obligations by entering into the settlement. The Undersigned explained why this settlement would be taxable under federal law and allowed Ms. Reynosa additional time to continue reading through the Agreement. Asking no further questions, Ms. Reynosa signed the Settlement Agreement, and copies of the signed Agreement were provided to both parties.

Even though the Agreement advised Ms. Reynosa to consult with an attorney prior to signing the agreement, she chose not to do so.[2] The Undersigned concludes that Ms. Reynosa understood the terms of the Settlement Agreement she signed, but she simply desired to negotiate a different settlement amount after the fact. Buyer's remorse is not a valid reason for this Court to find that the parties' Settlement Agreement is unenforceable. *Glass v. Rock Island Ref. Corp.*, 788 F.2d 450, 454-55 (7th Cir. 1986) (once a party has authorized a settlement agreement, she is bound to its terms even if she later changes her mind).

    b.  *Involuntariness of Consent*

Ms. Reynosa next claims that she was pressured into settling during the January 22, 2020 settlement conference, which essentially goes to whether her consent to settle was voluntary. The Court first notes that this claim did not surface until February 20, 2020. In her initial conversation with the Undersigned's Courtroom Deputy on January 23, 2020, Ms. Reynosa claimed that her stomach hurt during the settlement conference and that she wanted to sign the Agreement and leave due to her stomach pains. Only in her filing on February 20, 2020, after the Defendant had filed the present Motion to Enforce the Settlement Agreement, did Ms. Reynosa indicate that she felt pressured into settling due to a fear of potential sanctions.

---

[2] Ms. Reynosa undoubtedly knew that she could and should consult an attorney in this matter, as evidenced by the fact that an attorney briefly entered an appearance on behalf of Ms. Reynosa on April 23, 2020, before seeking to withdraw it five days later. (Dkts. 42, 45).

Ms. Reynosa seems to argue that she did not consent to the Settlement Agreement voluntarily. Even if the Court accepts the dubious timing of her claim of involuntariness, the Court finds the claim to be unsubstantiated. The Undersigned spent hours with the parties at the January 22, 2020 settlement conference, the majority of which were spent speaking with Ms. Reynosa. Based on the Undersigned's knowledge of the events and the contemporaneous notes taken by the Undersigned's staff, sanctions were never discussed, and the Court did not pressure Ms. Reynosa into accepting a settlement. The Undersigned instead discussed with Ms. Reynosa the fact that discovery had already closed and that the Defendant would likely file a dispositive motion, and provided her opinion regarding the potential value of Ms. Reynosa's two pending cases. Ms. Reynosa had the option of taking the settlement offered to her or continuing through the litigation process. She chose the option of signing the Settlement Agreement, on a line directly beneath an affirmation that she was signing the Agreement knowingly and voluntarily.

Moreover, the Court is concerned about the consistency of Ms. Reynosa's statements: on January 23, she claimed that she signed the Settlement Agreement because her stomach hurt and she wanted to leave the courthouse; on January 24, when Ms. Reynosa appeared in person at the Undersigned's chambers, she indicated that she wanted to revoke her consent because she wanted an increased settlement amount, and thanked the Undersigned for her assistance in this matter; then, on February 20, Ms. Reynosa indicated that she felt pressured into the

10

Agreement out of fear of sanctions, but also noted that she wanted to revoke because the Defendant failed to pay her in a timely fashion. Based on the timing and changing nature of Ms. Reynosa's allegations, and the lack of any evidence in the record to support such allegations, the Court does not find them to be credible. Taking into consideration the totality of the circumstances, the Court concludes that Ms. Reynosa voluntarily signed the Settlement Agreement at the January 22, 2020 settlement conference, and not out of fear of sanctions.

    c. *Revocation of Consent*

Finally, Ms. Reynosa argues that she gave consent to settle during the January 22, 2020 settlement conference, but that she revoked her consent thereafter. In evaluating the totality of the circumstances to determine whether Ms. Reynosa revoked her consent to settle, the Court first looks to the plain language of the Agreement. The parties' Settlement Agreement prescribes a specific procedure for revoking a consent to settlement:

> After you sign this Agreement, you have seven (7) days to revoke it by providing written notice to the Company representative signing below. This Agreement is not effective or enforceable until the revocation period expires. If you revoke this Agreement, you will not receive the payments and other consideration listed at the beginning of this Agreement.

One day after the settlement conference, on January 23, 2020, Ms. Reynosa called the Undersigned's chambers to state that she no longer agreed with the Settlement Agreement. The Undersigned's Courtroom Deputy spoke with Ms. Reynosa and told her to follow the steps in the Settlement Agreement if she wanted to revoke her consent or to submit any questions in writing to the Clerk's Office.

Instead of filing a written request, Ms. Reynosa appeared in person at the Undersigned's chambers the following day, January 24, 2020, seeking to increase the monetary terms of the Settlement Agreement. The Undersigned advised Ms. Reynosa that the settlement conference was concluded, and that she needed to follow the procedure outlined in the Settlement Agreement if she intended to revoke her consent. At the end of this conversation, Ms. Reynosa indicated that she understood, expressed her intent to revoke, and thanked the Court for its assistance.

Ms. Reynosa's next step was to mail a letter to the Clerk's office, received on January 27, 2020, that asked the Court to clarify four questions, all of which centered on the issue of whether the Settlement Agreement covered only the present case or whether it covered both this case and the Related Matter. (Dkt. 32). At the end of the motion, the Plaintiff indicated that she would give her response regarding revocation by the seventh day. (Id).

On the deadline for Ms. Reynosa to submit her revocation request in writing, January 29, 2020, Ms. Reynosa spoke on the phone with defense counsel, Mr. Young. (Dkt. 47 at 2). Ms. Reynosa expressed her disagreement with the settlement amount and told Mr. Young that she did not want to settle both cases for the $10,000 figure. (Id). Because the Settlement Agreement required Ms. Reynosa to submit her revocation in writing directly to the Defendant by January 29, Mr. Young requested that Ms. Reynosa provide her revocation in writing. On the call, Ms. Reynosa implied that she had already filed her revocation with the Court; thus,

Mr. Young followed up with Ms. Reynosa after the phone call via email and requested that Ms. Reynosa provide him with a copy of the revocation letter she submitted to the Court. (Dkt. 47 at 2). Ms. Reynosa did not respond to Mr. Young's email until February 3, 2020, in which email she stated: "I have revoked my settlement agreement." (Id). Ms. Reynosa also attached to the February 3 email a copy of her January 27, 2020 Motion for Clarification, which she noted was the revocation letter that she was referencing during the parties' January 29, 2020 phone call. (Dkt. 47-2).

Not receiving a written revocation by the assigned deadline, on February 14, 2020 the Defendant filed the present Motion to Enforce the Settlement Agreement (Dkt. 38). In response, Ms. Reynosa filed an amendment to her Motion for Clarification on February 20, 2020, wherein she claims that by filing the original Motion for Clarification she thought she was seeking an extension of the revocation time period in the Settlement Agreement. (Dkt. 39). She notes that the "clarification meant to me stopping all deadlines." (Id). She also claims that she felt pressured during the settlement conference to agree to settle and that she only agreed to settle because she was afraid of the sanctions that would be imposed on her if she did not consent. (Dkt. 39 at 3).

In her supplemental brief, Ms. Reynosa stated that she "made every effort to let everyone know of [her] dissatisfaction of the agreement" and that she revoked her consent on Friday, January 24, 2020. (Dkt. 48 at 1). She also notes: "I followed the timeline as requested, and since I was not able to get an answer from the

13

Judge's assistant, I went to see Judge Pryor, and I called Attorney Young as she instructed me to do." (Id). Finally, Ms. Reynosa claims that she "felt pressured to agree to settle in order not to be sanctioned." (Id). At no point, in any of her briefs or motions, does Ms. Reynosa indicate that she submitted a request in writing to the Defendant to revoke her consent to settle. She merely states that she attempted to let everyone know about her disagreement and dissatisfaction with the Settlement Agreement. That, however, is not enough under the Settlement Agreement duly signed by both parties in this case. Although in her February 20 Amended Motion for Clarification (Dkt. 39) she states that she revoked her consent on January 24, 2020 (presumably when she visited the Undersigned's chambers in person), that fact cannot be true because at the end of her original Motion for Clarification dated January 25, 2020 (Dkt. 32), she notes that she intends to provide her response by the seventh day, indicating her understanding of the revocation process and that the time period for revocation had not yet expired.

    Ms. Reynosa was required to submit her request to revoke in writing to the Defendant on or before January 29, 2020. Immediately after the parties' telephone conversation on the afternoon of January 29, 2020, Defendant's counsel even emailed Ms. Reynosa and requested the revocation in writing, but she did not respond to the email until February 3, 2020. In that email, Ms. Reynosa succinctly and unequivocally states: "I have revoked my settlement agreement," thereby demonstrating that she understood how to revoke her consent and possessed the capability of doing so. The Court does recognize that Ms. Reynosa attempted to

14

express verbally her dissatisfaction with the Settlement Agreement, but that expression is not enough. The Undersigned, her Courtroom Deputy, and Defendant's counsel all directed Ms. Reynosa to follow the process outlined in the Settlement Agreement if she decided to revoke her consent to settle, and the Court cannot accept Ms. Reynosa's claim that she did everything she could to revoke her consent to settle. Thus, the Undersigned concludes that the parties entered into a valid, enforceable contract at the January 22, 2020 settlement conference and the Plaintiff should be required to abide by the terms of the Agreement she duly signed.

## IV. Conclusion

For the reasons set forth above, the Undersigned recommends that the Defendant's Motion to Enforce the Parties' Settlement Agreement, Dkt. [38], be **GRANTED**, and that any obligations owed under the Settlement Agreement should be completed within fifteen (15) days of the Court's order.

Any objections to the Magistrate Judge's Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for such failure.

So RECOMMENDED.

Date: 7/1/2020

*Doris L. Pryor*
Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

ELAINE REYNOSA
3537 Apple Street
Indianapolis, IN 46203

All ECF-registered counsel of record.